and Forestry Company. I would like to reserve three minutes for rebuttal or reply. Submitting this case for unlawful termination under Law 75 to the jury was a mistake. From Casco's own evidence, it was evident that there was just cause for the termination. The district court erred in failing to enter judgment as a matter of law in favor of John Deere. At the time of the termination, Casco was in breach of its essential timely payment obligation, and there was no evidence to the contrary presented to the jury. Article 10 of the distribution agreement between the parties made clear that timely payment would give grounds for termination. It also made clear that if Casco breached that essential obligation, it was a condition that was considered to be sufficient and just cause for termination. The evidence presented to the jury based upon their theory as to why timely payment should not be considered No. No. In the sense that there was no evidence on the record that John Deere did not care about timely payments. To the contrary, the evidence on the record was that whenever, in the circumstances that Casco was late during the course of their relationship, John Deere would, when there was some timely payment, take actions. Like, for example, John Deere, the evidence proved that John Deere would put the account on hold, that John Deere would charge interest for late payment, that John Deere would hold shipments until the accounts were paid. So the evidence before the jury, based on the clear and ambiguous terms of the distribution agreement and the fact that Casco admitted that it was fully aware of what were the payment terms at the time between the parties and that it was in breach of its timely payment obligation to the tune of $149,000 at the time of the termination, was sufficient to establish that there was just cause for the termination under Law 75. You have to remember that definition of Under the contract, timely payment wasn't listed as an issue in the specific essentials paragraph, was it? That's correct, Your Honor. But as we argued in a brief, that's really putting form over substance. Because the District Court of Puerto Rico has recognized that in situations like the one that we had in this case, where we have a covenant in an agreement that specifically provides to the dealer and puts the dealer on notice, that failure to comply with a timely breach of that timely payment would constitute grounds for termination. The District Court of Puerto Rico has held that those covenants clearly fall within the legal definition of just cause under Law 75. And that was the evidence that was presented in this case based on the clear terms and conditions of the dealer agreement. There was no question that Casco was fully aware of what were those terms and conditions and that Casco knew at the time of the termination that because of its breach of that timely payment obligation, it could be terminated by John Deere as a result of that. Suppose the payment was not made timely. The only reason the payment wasn't made timely was because John Deere had committed itself a breach of the agreement in, I guess it was If the jury reasoned that way, then wouldn't they be able to find that the timely payment itself wasn't the reason for the termination? I think not, Your Honor. And the reason for that is that, first of all, there's a difference between impairment and termination under Law 75. The court instructed the jury on the different standards that are applicable for just cause and termination and posed two different and independent questions concerning impairment and termination. But, sure, you can have impairment and you can have termination. They're separate in that sense. But it doesn't preclude the possibility that in a particular factual scenario, one party could, in breaching the contract, so impair the other party's performance that the other party then is inevitably in breach solely because of that impairment. And I can't imagine that you could then seize on that breach, which you yourself caused, as then grounds for termination. Well And that assumes that there was a breach in December. Exactly. And I, Your Honor, I don't agree because I believe that the language of Law or not there was a breach of an essential obligation. And the breach of the essential obligation is a situation that has to deal with whether or not the dealer breached that obligation. But my question is, what if the manufacturer, caused by its breach, caused the dealer to breach? Well, Your Honor, I think the evidence in this case was not that. I'm just asking you the point. Do you agree or disagree that if, in fact, putting to one side whether it occurred, if, in fact, your client precipitated a breach that would otherwise not have occurred by its own breach? If, Your Honor, that action by the principal would have been the sole cause of the breach of that essential obligation, and the distributor had not breached other essential obligations under the agreement, that could be an argument to be made under Law 75. But that, the evidence of what presented in this case points to the contrary. But that then moves us to whether it, by not approving the sale of that one piece, whether your client acted in breach of the contract in doing that. Yes, Your Honor. And my response to that would be that, first of all, the evidence that was submitted to the jury was that the obligation or the cancellation of that piece of equipment would not have put CASCO in a position to be able to make timely payment on the amounts that were due at the time of the termination. And more importantly, Your Honor, this Court's decision in Hylostop, I think, proves the fact that if you have various causes for termination in connection with just cause analysis, the fact that you might have a cause that could potentially be precluded from being considered just cause because of the facts of the case, that doesn't mean that the other potential actions for just cause are not to be considered. So I think I hear you saying that even if your client had wrongfully not approved that equipment, which you're not conceding they did, but I think I hear you saying that even if they did, the net revenue to the other side wouldn't have been anywhere near enough to put them in a position to make timely payment? That is correct, Your Honor. And what's the evidence that shows that? What was the value of that equipment? Well, the evidence that was submitted before the jury was that the maximum profit that CASCO would have been able to make from the sale of that equipment had that equipment gone through, the sale of that equipment was $58,000. At the time of the termination, the amount that was owed by CASCO to John Deere was $149,000. So Your Honor? I'm sorry, is there evidence that they had no other assets or financial resources in which to pay? No, Your Honor. Quite the contrary. What's important to consider in this case is that within 48 hours of receiving the notice of termination, CASCO, from one of its accounts, came up with $149,000 to pay the amounts that were due and not timely paid. So based on the evidence before the jury, it would have been impossible to infer that CASCO was trapped for cash because in 48 hours it came up with the money. We, our position, Your Honor, is that CASCO was simply seeing how far it could draw out John Deere to determine whether or not John Deere was going to end up terminating him for untimely payment. It was just pushing the envelope, but it was its own actions or omissions that triggered the termination under Law 75. It was nothing that John Deere did. It was CASCO's failure to comply with its essential obligation, and I think the fact that they had the money in 48 hours to come up with a payment makes clear that it wasn't an issue of having problems getting the cash to make timely payments on that account. Now, as far as a... So stay with that because it's a bit... I think the other side would say that's a two-edged sword. It would... The sharp edge for you is the one you just stated, that they brought this on themselves by not paying when they could have, but the other edge of it might be, well, if two days within the termination notice they turned around and paid you in full, then maybe you weren't really concerned about getting the payment because otherwise you would have just reinstituted them as a dealer, that you must have had another motive, that being the Volvo Association. Well, Your Honor, first of all, I think that that's not correct under the terms of the agreement. They had an obligation to make timely payment. They failed to make timely payment. Whether or not after the termination, CASCO came back and said, no, here's the money, reinstate the terms of the termination contract, that doesn't change the law. The law says if you breach the agreement, there's just cause for determination. As far as the possibility of what CASCO has raised, that there might be pretexts injected into the concept of Rule 75 Just Cause, that's contrary to the plain reading of the statute as well as the jurisprudence from the Supreme Court of Puerto Rico and the District Court of Puerto Rico on that matter. The only case that mentions pretext in passing is really this court's decision in Hyderstub and the reality is that what this court found in Hyderstub, in essence, like it found in Bio, it also found in another case with the District Court, is that what had happened at the time was that there was evidence that timely payment was not an essential obligation and thus because it was not an essential obligation, it was not just cause of the agreement. So trying to terminate a distributor based on an unessential obligation was clearly pretextual. But reading Hyderstub to mean that you can inject pretext into the Just Cause inquiry goes well beyond the plain reading of Law 75 which nowhere in the statute mentions pretext or a shifting of burdens of proof regarding pretext as a last resort to try to overstate. Are you saying that our decision in Hyderstub does not stand for the proposition that pretext can be taken into account or that it does acknowledge it but it's wrong? No, what I'm saying, Your Honor, is that the mention of pretext is to the extent that if you have an obligation, an essential obligation, that there's evidence that it's not essential, then terminating somebody based on that condition or that obligation would be pretextual under Law 75. That's my view. Okay. May it please the Court. Ricardo Casillas for CASCO, Inc. A reasonable juror on this record was entitled to find no just cause for termination of the dealer contract and believe CASCO's expert testimony in awarding full compensatory damages. After applying a deferential standard of review to the jury verdict reserved for Deere's sole challenge to the weight and the sufficiency of the evidence, this Court should affirm the verdict for CASCO in its entirety. As Judge Howard observed in the Esteto-Berganzo case, cited in the brief, which incidentally is a Dola's case, Deere faces an uphill battle on this record to unsettle the jury verdict for a number of reasons. First, during the nine-day trial, Deere did not object to CASCO's relevant evidence admitted to disprove the reasons for the termination, establish the course of dealings of the parties of payments in light of market conditions, or prove a pretext for the termination. Second, Deere did not move, eliminate, or object at trial to plaintiff's expert testimony on Law 75 damages or to the economic expert testimony. It was for the jury to decide between conflicting and competing expert testimony whom to believe, and this Court has held that absent any objections, as here, the accuracy of calculations of damages is for the jury. Third, and perhaps even more importantly, Deere did not move below under Rule 50A or appeal from the jury's liability verdict in favor of CASCO for the impairment of contract by refusing to serve the purchase order. Coincidentally, by December 2012, CASCO was completely on time in its payments. One of the reasons that Deere gave for the impairment in December to refuse to serve the order was that CASCO had not complied with the new model qualification requirements. The jury determined there was liability. There was a violation of Law 75. They must have believed that that reason was not just cost. They did not appeal. That was one of the reasons stated in the termination letter three months later to terminate the agreement, along with seven other reasons, including lack of payment. Now, Deere misstates the law in this circuit and in the Supreme Court of Puerto Rico concerning the essentiality of payments as just cost for termination. There is no per se rule or absolute rule under Puerto Rico law that failure to pay is just cost without more. Just then Judge Breyer in the biomedical case held the matter is not so simple. What the court said in that case was that payment is normally an essential obligation. And in that case, the principal had given a number of reasons in the termination letter, lack of performance, as here, and failure to pay on time. And there was a jury issue in that case, and the court denied summary judgment. In this case, the case went to the jury. The jury had a basis to conclude there was no just cause on the record. So fundamentally, it is not correct that as a matter of law, failure to pay an invoice is just cost per se. Well, at some point, failure to pay has got to be. I mean, that's about the most essential thing in any commercial contract is the other side paid. It's hard to think of anything more. Theoretically, Your Honor, you're right. But then timing, how timing may not be, you know, if you're a day late, that perhaps is not essential. In fact, many contracts have. That's exactly correct. And what makes this case so generous and even justifies giving deference to the jury's verdict based on the evidence, pretty flatly what Judge Thompson alerted to. Article 3 in the contract does not specify payment as an essential obligation. That seems somewhat odd, but Deere admitted during trial that the payment terms were not part of the contract, and there was a good reason for that. This is a construction industry case. The payment terms were different. There were 20-day terms, 30-day terms, 90-day terms, depending on whether it was the sale of a part or whether it was the sale of a machine, whether there were sales to the government. So there was a course of dealings in terms of payment and when the payment would have been made. So there is no absolute rule about not paying by a certain date. So help us on that, because I understood that the payment terms actually here were specifically negotiated as a result of prior dispute. And in 2009, that prior dispute was settled, and pursuant to that settlement, Deere agreed to reinstate certain prior payment terms. The prior suit had to do with the cancellation of credit, not necessarily the payment terms. But the prior suit was settled without prejudice, but the overarching agreement remained in full force in effect. It was never modified. The 1986 agreement does not specify that payment terms as an essential obligation. And the late payment here, could you just give us a sense of how late it was and how much? In other words, the termination was in March, March 29, end of March? The termination was in March. By December, CASCO had been fully on time in payments. The order for the machine that Deere refused was for roughly $250,000. It had never been the position of CASCO below that the cash flow from that sale, had it gone through, would have been sufficient to pay. But CASCO made, between January and March, eight partial payments totaling $234,000. So there was a good faith effort to pay up on the account. There was, this is not a case about a failure to pay. So stay with us, they didn't pay in full in January, that's when they became in arrears? In January, or late in January, they were in arrears in payment in terms of the amounts that were outstanding. At the time of termination, what Deere did was to accelerate the amounts that were outstanding and were unpaid. So there was a certain amount of money. I cannot recall exactly what that amount of money was by the time that they terminated the agreement, but CASCO had been paying on time. When did Deere first complain about the payment that wasn't fully made at the end of January? Well, what happened on the record was that Deere continued to accept the partial payments as they came in. But the dispute turned on at another level because by February, instead of selling the machine to CASCO, what Deere did was sell another comparable machine to another client in Puerto Rico under the pretext that CASCO would be able to serve it. So what was happening then by January was that CASCO's mechanics were trying to get up to speed to serve the machines that were being requested to be sold. The record shows that Deere was interfering with CASCO's ability to comply with the allegations that they were not up to speed with the contract. But the payments were continually being made. But the thing is, Your Honor, that the allegation that Deere has made here, the Article 10 on the contract, on its face, would allow a termination for lack of payment simply because the contract says so. That's not the law. In fact, in the RW International case, 83F3D, it's cited in the brief, the author of that opinion was Judge Coffin. And Judge Coffin in that case specifically described that a term in a contract that specifies or allows the principal subjectively or unilaterally to terminate the contract without proving just cause is unenforceable. So, you know. Did Deere give warning that it was about to terminate? Deere gave a, well, Deere gave notice prior to the March letter that it would terminate the agreement. And then why, since you, apparently your client had access to the money because they paid two days after the termination. Why didn't they pay when they got the notice that termination was going to come down the road? Casko, Inc. is a separate corporation. Casko, Inc. did not have the cash flow to pay up and be up to speed on the accounts. It did not have the money. But my client was funding from his personal funds in good faith trying to bring up, to speed the allegations. The problem is that you don't have... Wasn't he a guarantor? I beg your pardon? Your individual client was a guarantor, wasn't he? The individual client was a guarantor. So why didn't he, why didn't, so therefore he has just as much interest in the payment being made. There was no, there's no evidence on record that my client had sufficient funds to pay up the acceleration of the debt under the agreement. My client had continued to pay, but the thing is that the jury had enough evidence to conclude no matter what Casko did in terms of the payments and the timing of the payments, whether they were up to speed in terms of the account, they would have terminated the agreement. Deere did not object to years of evidence of an intent to retaliate against Casko because of its affiliation with Volvo, not inviting the dealer to conferences with other dealers and discriminating against Casko. There were other motives that were out there to terminate the agreement that had nothing to do with payment. Doesn't that beg the question? Certainly, if you have lots of motives to terminate someone, but then they breach an essential term of the contract, certainly you don't lose the ability to terminate for that breach merely because you've had these other motives. So it takes you back to was there a breach of the intentional term of the contract, doesn't it? The jury found that there was none. I mean, what it proves is that when you have different circumstances that could explain why a party is not fully complying with a contract, it becomes a jury issue. And that's what the jury had here. The jury had the contract, the terms of the contract, not defining the payment terms as essential. The jury considered evidence of the course of dealings between the parties and determined that there was a pretext to terminate the agreement. And this court has held the pretext is a legitimate explanation to rebut an allegation of just cause in the waterproofing case. Suppose they hadn't terminated and the client had continued not to make timely payments for another six months. Would they be precluded from terminating you and not be second-guessed by a jury? They would be precluded from terminating, Your Honor, because the amount of the alleged debt would have to be set off from the amount that would be due under Law 75 for the unjustified termination of the agreement. Because what Deere did here was to appropriate the goodwill created by the distributor for 27 years under a pretext that failure to pay on time was the reason for the termination. Over the nine-day jury trial, the jury heard it. So absent an absolute rule that failure to pay on time, even one invoice, would be just cause, it became a jury issue. This is what this court held in the Rubbermaid case 24 years ago where it affirmed a Law 75 verdict in favor of the dealer under very similar circumstances. Your Honor, if I may, I'd like to address the cross appeal. The cross appeal presents a novel issue of Puerto Rico law because no case has interpreted a Law 75 claim in the context of a dolus claim, a deceit claim under Puerto Rico law. And the district court did not allow the jury to make that determination. It made a decision under Rule 50A and should have basically deferred ruling until the jury heard the evidence that had been admitted without objection about bad faith acts after the settlement agreement was signed in 2009 through the impairment in 2012 and up to 2013, overt acts with an intention to retaliate against CASCO because of its affiliation with Volvo and a number of other things. The court did not dismiss the dolus claims based on insufficiency of the evidence. It simply held that as a matter of law, the measure of damages that CASCO had been proposing had not been accepted because there was no constructive termination. We have a difference of opinion on that and there is authority construing Law 75 to allow a constructive termination claim. But what is somewhat perplexing is that the district court, in its order eliminating a few weeks before trial, recognized CASCO's theory that the value of the line in 2009, which was higher based on the admissible evidence, than the value of the line in 2013 could be used as a benchmark to determine the diminished value of the line because of dolus. And the theory that was alleged in the complaint and based on the evidence presented at trial was that in 2009 DEER had an intention to terminate the agreement. They settled. They saved the exposure from Law 75 liability by timing the termination after the three-year statute of limitations ran. Coincidentally, in September 2012, I recall, in December they were breaching the agreement. So the statute of limitations ran until the line was worthless. The jury determined that the line was worth 1.4 million. In 2009, the line would have been worth 10 million. They timed the termination in bad faith because they were taking advantage of the construction industry market in Puerto Rico had been declining and that's why they acted in bad faith. But the jury was not allowed to consider that. And if there's any question about whether the theory is novel, may I finish? The issue should be certified to the Supreme Court of Puerto Rico on that score. The score should affirm the verdict and order a partial new trial solely on the dolus claim or certify the issue to the Supreme Court of Puerto Rico. Thank you. Thank you. Regarding the question posed as to the amounts that were due at the time of the termination and timing, the evidence was that in January of 2003, CASCO owed approximately $65,000 that were due between 1 and 30 years after the 60-day period that they had to pay payment had already expired. So it's starting the terms for the untimely payment. In February of 2013, that amount had increased to $122,000. By mid-March, the amount was $184,000. And by the time the agreement was terminated, CASCO had $149,000 in due payments. The District Court of Puerto Rico has held that there is no need to issue any hearing periods or any warnings regarding termination once a bidder breaches a timely payment obligation. That's the end of the query under Law 75. So if they missed by one day on a payment, you could have terminated them? Under a reading of Law 75, which is not the case because in this case, they were substantially late, not one day late. Wouldn't we have to, in effect, reason that way to rule for you? Because if, in fact, you couldn't terminate if they were just 20 hours late, then what do we use for benchmark other than reasonable? And if we're going to use reasonable, we're kind of getting close to the jury box here. If that was the agreement between the parties and the terms of the agreements were clear as they were in this case, the failure to make timely payment and thus no failure to comply with an essential obligation under the agreement based on the definition of just cause under Law 75 would have been given grounds for termination in that scenario. Now, it is important to note also regarding the Dolo claim in particular that the Dolo claim was framed in a way that it made it dependent on the availability of a construction termination claim under Law 75. That was the ruling of the district court and there was no manifest error in law on the district court on that ruling. Was there some evidence that there had been prior occasions? Very few, but there were prior occasions where they did not make timely payment precisely? There was one occasion that they had not made a timely payment in mid-September, I believe, of 2012. And they weren't terminated? They were not terminated, but the case law in this circuit is clear that just because a party fails to comply with an obligation to make timely payment that does not mean that you have to terminate them right then and there or lose forever your right to terminate the agreement under Law 75. So, in terms of the Dolo issue, Your Honor, it's important to highlight that there was an argument made by CASCO concerning the diminution of the line in 2013 and 2009 and that they were entitled to the difference based on a Dolo claim. That would circumvent Law 75. Law 75 has a statute which provides what are the damages for termination and, more importantly, there is a but-for element missing. CASCO admitted in its brief and during the presentation of evidence that the diminution of the line had nothing to do with anything that John Deere did or did not do. It had to do with the economy. So, the but-for requirement under Dolo, even if it were to apply, is missing in this case. The diminution had to do with the economy. Nothing that John Deere did or did not do changed that in any way, shape, or form. Very well.